IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NATIONWIDE PROPERTY &
CASUALTY INSURANCE COMPANY,

  Plaintiff,

    v.

HAMPTON COURT, L.P., et al.,

  Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-4726-TWT

OPINION AND ORDER

This is a declaratory judgment action. It is before the Court on the Plaintiff Nationwide Property & Casualty Insurance Company's Renewed Motion for Judgment on the Pleadings [Doc. 37]. For the reasons set forth below, the Plaintiff's Renewed Motion for Judgment on the Pleadings [Doc. 37] is GRANTED.

I.    Background

The Plaintiff, Nationwide Property & Casualty Insurance Company ("Nationwide"), seeks a declaration that it does not owe a duty to defend Defendant Hampton Court, L.P. ("Hampton Court") in a separate wrongful death and personal injury lawsuit. According to the complaint in that underlying case ("Underlying Complaint"),[1] Hampton Court and other

---

[1] Nationwide filed the Underlying Complaint as an exhibit to its initial Complaint but not its Amended Complaint. Typically, "[a]n amended pleading supersedes the former pleading" and "the original pleading is abandoned by the amendment." *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243

defendants "allowed a dangerous substance—mold—to grow in Decedent [Anne Covington] Phillips apartment and failed to warn Decedent Anne Phillips and remediate the mold." (Compl., Ex. A ("Underlying Compl."), ¶ 1 [Doc. 1-1]). Nationwide provided businessowners insurance coverage to Hampton Court during the alleged incident. (Ans. to Am. Compl. ¶ 17 [Doc. 24]; Am. Compl. ¶ 17 [Doc. 15]).

In the present case, Nationwide seeks a declaration that Hampton Court's insurance policy does not extend to the injuries in question and that, as a result, Nationwide does not owe a duty to defend Hampton Court in the underlying suit. Specifically, Nationwide claims that (1) the "Fungi or Bacteria Exclusion" bars coverage, (2) the "Pollution Exclusion" bars coverage, and (3) it owes no duty to defend Hampton Court on Defendant Lee Voine Phillips's fraud and intentional misrepresentation claims. (Am. Compl. ¶¶ 38, 43, 49).

Prior to the present Motion, Hampton Court moved to dismiss Nationwide's claims for declaratory relief, and Nationwide moved for judgment on the pleadings as to those claims. In an Order issued on May 15, 2024 [Doc. 34], the Court denied both motions. First, the Court denied Nationwide's

---

(11th Cir. 2007). However, a document not attached to the operative complaint may still be considered on a motion for judgment on the pleadings if it is "(1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). Here, the Underlying Complaint is obviously central to Nationwide's claims, and neither party disputes its authenticity.

2

motion for judgment on the pleadings without prejudice to refile within thirty days of the filing of Hampton Court's responsive pleading, finding that the motion was filed prior to any responsive pleading by Hampton Court and thus premature. (*See* May 15, 2024 Op. and Ord., at 6). Second, the Court denied Hampton Court's motion to dismiss, finding that Nationwide pleaded a plausible claim regarding each of its three counts. (*See id.* at 8–13). Following this Court's Order, Hampton Court filed its Answer to Nationwide's Amended Complaint. Now, Nationwide renews its motion for judgment on the pleadings on the same grounds.

## II.   Legal Standard

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." A court should grant a motion for judgment on the pleadings where "there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005). "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). Where the movant is the defendant, the Court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the nonmoving party. *Scott*, 405 F.3d at 1253. However, where the plaintiff is the movant as here, "the fact

3

allegations of *the answer* are to be taken as true, but those of the complaint are taken as true *only where and to the extent that they do not conflict with those of the answer.*" *Capitol Specialty Ins. Corp. v. W. View Apartments, Inc.*, 2021 WL 6101663, at *1 (11th Cir. Dec. 22, 2021) (quoting *Bass v. Hoagland*, 172 F.2d 205, 207 (5th Cir. 1949)).

### III.  Discussion

A federal court sitting in diversity applies the forum state's choice-of-law rules. *Am. Fam. Life Assurance Co. of Columbus, v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). In Georgia, an insurance policy is governed by the law where the policy was delivered. *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1271 (11th Cir. 2014) (quoting *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998)). Under Georgia law, "[a]n insurer's duty to defend is determined by 'comparing the allegations of the [underlying] complaint with the provisions of the policy.'" *Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 73 F.4th 934, 941 (11th Cir. 2023) (quoting *Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 371 (2004)). If the allegations of the underlying complaint unambiguously exclude coverage, then the insurer is excused from its duty to defend. *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga. 564, 565 (1997) (citation omitted). However, if the underlying complaint sets forth any claim that "even arguably" falls within the policy's coverage, then the insurer

4

has a duty to defend the suit in its entirety, regardless of the ultimate liability of the insured. *Hoover v. Maxum Indem. Co.*, 291 Ga. 402, 408 (2012) (quoting *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494, 497 (2007)).

To interpret the policy, the Court must look to contract law. *Taylor Morrison Servs, Inc. v. HDI-Gerling Am Ins. Co.*, 293 Ga. 456, 459 (2013) (quoting *Hunnicut v. S. Farm Bureau Life Ins. Co.*, 256 Ga. 611, 612 (1987)). If the terms of the insurance contract are plain and unambiguous, the Court must "simply [ ] apply [them] as written, regardless of whether doing so benefits the carrier or the insured." *Reed v. Auto-Owners Ins. Co.*, 284 Ga. 286, 287 (2008) (citations omitted). This rule holds even for policy exclusions, which "must be given effect" when unambiguous, "even if 'beneficial to the insurer and detrimental to the insured.'" *Winder*, 73 F.4th at 941 (quoting *Fid. Nat'l Title Ins. Co. of N.Y. v. OHIC Ins. Co.*, 275 Ga. App. 55, 57 (2005)). If the terms of the insurance contract are ambiguous, however, the Court must construe it "strictly against the insurer/drafter and in favor of the insured*." Ga. Farm Bureau Mut. Ins. Co. v. Smith*, 298 Ga. 716, 719 (2016).

Under Hampton Court's insurance policy ("Policy"),[2] Coverage A[3] grants

---

[2] Like its treatment of the Underlying Complaint, the Court considers the Policy under the present Motion notwithstanding the fact that the Policy is not technically attached to the Amended Complaint. The Policy is central to Nationwide's claims, and neither party disputes its authenticity. *See Johnson*, 107 F.4th at 1300.

[3] Nationwide makes additional arguments regarding Coverage B. However, the Underlying Complaint appears to not allege any "personal and

5

coverage for sums "that the insured becomes legally obligated to pay as damages because of 'bodily injury'" to which the insurance applies. (Compl., Ex. C[4] ("Policy"), at 230 [Doc. 1-3]). Among other criteria, the insurance applies to "bodily injury" that was "caused by an 'occurrence'" during the policy period. (*Id.* at 230). The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time," (*id.* at 247), and it defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," (*id.* at 249). In "any suit" seeking damages for a covered injury, Nationwide has a "duty to defend the insured." (*Id.* at 230).

In support of the present Motion, Nationwide argues that the injuries alleged are not covered and thus do not invoke Nationwide's duty to defend. It seeks a declaration in Count I that the "Fungi or Bacteria Exclusion" bars

---

advertising injury" that might conceivably fall under the four corners of Coverage B, and Hampton Court does not mention Coverage B in its brief. Thus, the Court does not discuss this coverage further.

For reference, Coverage B grants coverage for sums "that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury'" to which the insurance applies. (Policy, at 237). Among other criteria, the insurance applies if the "personal and advertising injury" was "caused by an offense arising out of [Hampton Court's] business" during the policy period. (*Id.* at 238). The Policy defines "personal and advertising injury" as including injury, including "bodily injury," because of "[t]he wrongful eviction from, wrongful entry into, or invasion or the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor." (*Id.* at 249).

[4] Citations to the Policy reference the document's PDF pagination.

6

coverage for the bodily injury claims, and it seeks the same in Count II with respect to the "Pollution Exclusion." Assuming either or both exclusions apply, Nationwide additionally seeks a declaration in Count III that it owes no duty to defend Hampton Court on Phillips's separate fraud and intentional misrepresentation claims. (Am. Compl. ¶¶ 38, 43, 49). The Court discusses each count in turn.

### A. Fungi or Bacteria Exclusion (Count I)

The Fungi or Bacteria Exclusion is an endorsement to the insurance coverage. It modifies the Policy by barring coverage for bodily injury arising out of a "fungi or bacteria incident" (Policy, at 262), defined as

> an incident which would not have occurred, in whole or in part, but for the actual, alleged or threated inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any 'fungi' or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

(*Id.*). The endorsement defines "Fungi" as "any type or form of fungus, including mold or mildew . . . ." (*Id.*).

In support of its contention that the Bacteria or Fungi Exclusion applies, Nationwide makes two chief points.[5] First, to fall under the Exclusion, the

---

[5] Nationwide additionally argues that the exception to the Fungi or Bacteria Exclusion regarding product "intended for human or animal consumption" squarely does not apply. (Pl.'s Renewed Mot. for J. on the Pleadings, at 12–13). The Court agrees; nothing about this case relates to the exception. Hampton Court did not address the exception in its briefing.

7

Underlying Complaint need only *allege* that the injuries arose *in whole or in part* from a "fungi or bacteria incident" (from mold); it does not matter if the *actual* cause of the injuries later turns out to not be mold. (Pl.'s Renewed Mot. for J. on the Pleadings, at 10–11). Here, Nationwide argues that the Underlying Complaint does just that, alleging that mold at least in part caused Decedent's injuries.[6] (*Id.* at 10). Second, due to the last clause in the definition of the "fungi or bacteria incident"—known as an "anti-concurrent cause" provision—it does not matter whether mold is the *only* actual or alleged cause of the injuries or whether mold is but one among multiple actual or alleged causes that contributed to the incident. (*Id.* at 11–12).

In response, Hampton Court contends that the Underlying Complaint "alleges that Decedent's death could have been caused *exclusively* by a substance other than mold." (Def.'s Resp. in Opp'n to Pl.'s Renewed Mot. for J. on the Pleadings, at 9). Specifically, Hampton Court relies on language in the Underlying Complaint that references "mold and/or other toxic substances" as the cause of Decedent's illness. (*Id.* at 8–9). Because the Underlying Complaint

---

[6] To support its argument, Nationwide also points in its brief to certain admissions made by Hampton Court in this case. (*See, e.g.*, Pl.'s Renewed Mot. for J. on the Pleadings, at 2). However, the Court does not consider those admissions under the present Motion, given that Georgia law appears to focus the duty-to-defend inquiry on the underlying complaint and the insurance policy alone. (*See* Def.'s Resp. in Opp'n to Pl.'s Renewed Mot. for J. on the Pleadings, at 10–11 (citing *James River Ins. Co. v. Dalton-Whitfield Reg'l Solid Waste Mgmt. Auth.*, 2022 WL 18777374, at *4 (N.D. Ga. Nov. 7, 2022))).

"clearly allow[s] for the possibility that Decedent's injuries were the result of exposure to a substance other than fungi or bacteria," and because a duty to defend the suit exists "if the claim *potentially* comes within the policy," Hampton Court argues that Nationwide must defend the underlying suit. (*Id.* at 6, 9–10).

The Court holds that the Fungi or Bacteria Exclusion applies. The Underlying Complaint's allegations—that mold at least in part caused Decedent's bodily injury—unambiguously exclude the incident from coverage and thus relieve Nationwide of its duty to defend the suit. As previously stated, Hampton Court presents a "strained reading of the [U]nderlying [C]omplaint [that] runs contrary to the clear allegations of mold as causing [Decedent's] illness and [to] the existence of mold in her apartment." (*See* May 15, 2024 Op. and Ord., at 9).

Although the Underlying Complaint does make five references to "mold and/or other toxic substances," these vague and occasional references to "other toxic substances" are not sufficient to create the ambiguity Hampton Court seeks to present. The repeated and specific references to mold throughout the entirety of the Underlying Complaint make clear that the Underlying Complaint alleges that mold at least in part caused Decedent's illness—which is all that is necessary to trigger the Fungi or Bacteria Exclusion. As mentioned above, the Underlying Complaint plainly states in its opening paragraph that

the defendants in the underlying suit "allowed a dangerous substance—*mold*—to grow in Decedent Phillips apartment and failed to warn Decedent Anne Phillips and remediate the *mold*." (Underlying Compl. ¶ 1 (emphasis added)). Moreover, the Underlying Complaint specifically alleges that the Decedent "experience[d] health problems *as a result of her exposure to mold*" and refers to "injuries she suffered *from the toxic mold*" (*Id.* ¶¶ 38, 80 (emphasis added)). It also submits that expert testing in the apartment revealed "the presence of a dangerously high level of *mold* throughout [Decedent's] apartment." (*Id.* ¶ 32 (emphasis added)). Other similar references to mold throughout the Underlying Complaint seem to clearly foreclose Hampton Court's reading of the Underlying Complaint—that it alleges a non-mold substance may have exclusively caused Decedent's injuries.[7] Thus, the Fungi or Bacteria Exclusion provides an independent basis on which to excuse coverage and Nationwide's duty to defend.

### B. Pollution Exclusion (Count II)

The Policy excludes from coverage any duty to defend liability due to bodily injury "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at or from any

---

[7] For example, the Underlying Complaint refers exclusively to mold in ¶¶ 26–28, 32–33, 35, 37–38, 40, and it also uses the language of "mold, chemicals, *and* allergens" (and "mold, chemical *and* allergen problems"), Underlying Compl. ¶¶ 54–56, 63–64, 67–68 (emphasis added).

premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured." (Policy, at 232). The Policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, petroleum products and their derivatives, chemicals and waste." (*Id.* at 249–50). By exception, the Pollution Exclusion does not apply if "bodily injury" is "sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify that building, or equipment that is used to heat water for personal use, by the building's occupants or their guests." (*Id.* at 232). The parties disagree on both (1) the reach of the "pollutant" classification and (2) the application of the exception to the Exclusion regarding "smoke, fumes, vapor or soot."

### 1. Pollutant Classification

On the first point regarding the reach of "pollutant," Nationwide argues that "mold," "toxic and hazardous mold," "molds, chemicals, and allergens," and "toxic mold and/or other toxic substances" all fall within the term "pollutant," which is broadly defined as an "irritant or contaminant." (Pl.'s Renewed Mot. for J. on the Pleadings, at 13–15). Hampton Court argues in response that the Underlying Complaint's reference to nonspecific substances besides mold (e.g., "other toxic substances") are too vague to permit classification as a "pollutant." (Def.'s Resp. in Opp'n to Pl.'s Renewed Mot. for

11

J. on the Pleadings, at 15–17). It additionally contends that interpreting "mold" as a "pollutant" would render the Bacteria or Fungi Exclusion meaningless. (*Id.* at 18).

The Court is persuaded that the alleged cause of the Decedent's injuries unambiguously qualifies as a "pollutant" under the Pollution Exclusion. As an initial matter and as discussed above, the thrust of the Underlying Complaint is its allegation of toxic and hazardous mold. It is therefore appropriate for this Court to focus its inquiry on mold rather than unspecified "other toxic substances" or similar. For guidance on how to construe the terms "irritant or contaminant" under the "pollutant" definition, the Court turns to Georgia law. The Georgia Supreme Court has instructed that courts "need not consult a plethora of dictionaries and statutes" and that they should "simply apply the terms of the contract as written." *Smith*, 298 Ga. at 720–21. In doing so, courts applying Georgia law have "broadly" interpreted the terms "irritant or contaminant" within the "pollutant" definition.[8] *Love Lang v. FCCI Ins. Co.*,

---

[8] Other states' courts have adopted a narrower interpretation of an "irritant or contaminant" under the "pollutant" definition. *See, e.g.*, *In re Liquidation of Legion Indem. Co.*, 2015 IL App (1st) 140452, ¶¶ 15–20, 44 N.E.3d 1170, 1174–76 (2015) (finding that mold is not a "pollutant" because, despite the exclusion's plain language, interpreting "pollutant" as "any [ ] irritant or contaminant" would be overly broad); *McKnight v. USAA Cas. Ins. Co.*, 871 A.2d 446, 451 (Del. 2005) (finding that mold is not a "pollutant" because it was not expressly listed in the definition of "pollutant," notwithstanding the fact that "pollutant" was defined as an "irritant or contaminant").

530 F. Supp. 3d 1299, 1308 (N.D. Ga. Mar. 30, 2021). For example, in Georgia, pollutants in a Pollution Exclusion need not be limited to "traditional environmental pollution," nor does the Pollution Exclusion require that the pollutant be "explicitly named in the [P]olicy." *Smith*, 298 Ga. at 720. Moreover, courts have previously held that construction dust, stormwater runoff and resulting sediment, and noxious odors were pollutants under exclusion provisions similar to the present one. *Love Lang*, 530 F. Supp. 3d at 1311, 1308.

Under a plain reading of the Pollution Exclusion at issue here, which broadly defines "pollutant" as "*any* solid, liquid, gaseous or thermal *irritant or contaminant*," (Policy, at 249 (emphasis added)), the Court finds that the "mold" alleged clearly qualifies as a pollutant. The Court need not and does not determine that all forms of mold qualify as pollutants. It is sufficient that the harmful mold alleged in this particular case clearly qualifies as an "irritant or contaminant" under the present Pollution Exclusion. Moreover, it is plainly apparent that the Decedent's injuries must have arisen from the "dispersal," "seepage," "migration," or "release" of mold at or from Hampton Court's apartment building, as required by the Pollution Exclusion.

The Court notes that, even if it were to evaluate whether "chemicals," "allergens," and "other toxic substances" qualify as "pollutants," it would reach the same result. While it is true that generic phrases such as "chemicals,"

13

"allergens," and "toxic substances" are "conceptually quite broad and certainly may, in theory, include benign substances rather than 'pollutants,' the specific nature of the claim alleged . . . prevents this [C]ourt from engaging in such untethered speculation." *Mark I Restoration SVC v. Assurance Co. of Am.*, 112 F. App'x 153, 157 (3d Cir. 2004) (enforcing a nearly identical pollution exclusion where the underlying complaint alleged harm caused by "chemicals, deodorizers, odor eliminators, and/or other foreign substances"). In other words, given the harm caused to the Decedent in this particular circumstance, the substance or substances that allegedly caused the Decedent's injuries can be unambiguously classified as an "irritant or contaminant" under the Pollution Exclusion.

Additionally, the Court is not persuaded by Hampton Court's argument that interpreting "mold" as a "pollutant" renders the Fungi or Bacteria Exclusion meaningless. Hampton Court does not cite any cases for this proposition, but the Georgia Supreme Court has stated that courts must "consider the insurance policy as a whole" and that "a preferred construction will give effect to each provision, attempt to harmonize the provisions with each other, and not render any of the policy provisions meaningless or mere surplusage. *Nat'l Cas. Co. v. Ga. Sch. Bd. Ass'n–Risk Mgmt. Fund*, 304 Ga. 224, 228 (2018) (citing *York Ins. Co. v. Williams Seafood of Albany, Inc.*, 273 Ga. 710, 712 (2001)). Notwithstanding this preference, Georgia courts also

14

instruct, as Nationwide argues, that exclusions in insurance policies are to be read independently of one another such that no exclusion "can properly be regarded as inconsistent with another exclusion, since they bear no relationship with one another." *Fid. Nat'l Title*, 275 Ga. App. at 58 (citing *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 795 (N.J. 1979)); *Nautilus Ins. Co. v. Chiaha Guild of Arts & Crafts, Ltd.*, 2024 WL 2785316, at *3 (N.D. Ga. Mar., 7, 2024) ("Georgia law is clear that exclusions from coverage must be read independently of each other, and where one exclusion is unambiguous, it operates to bar coverage for the underlying claims." (citing *Cap. Alliance Ins. Co. v. Cartwright*, 236 Ga. App. 554, 556 (1999))). The Court agrees. Although the two exclusions may appear to overlap to some degree, it does not require construing one to be mutually exclusive of the other.

### 2. Exception to the Exclusion

On the second point regarding the exception, Hampton Court argues that the Underlying Complaint does not allege specific information regarding the source of the mold (or any other mentioned substance) such that the Court cannot determine at this time whether the exception applies. (Def.'s Resp. in Opp'n to Pl.'s Renewed Mot. for J. on the Pleadings, at 20). Hampton Court points out that, because future case development may reveal that the exception does apply, judgment on the pleadings is improper. (*Id.* at 20). In reply, Nationwide argues that the Underlying Complaint's failure to allege that the

15

injury arose from some form of "smoke, fumes, vapor or soot"—regardless of any specific source—means the exception cannot apply. (Reply Br. in Supp. of Pl.'s Renewed Mot. for J. on the Pleadings, at 8). It bolsters its argument by contending that the Underlying Complaint's allegation of the "grow[th]" of mold takes the claim "outside" the realm of "smoke, fumes, vapor or soot." (*Id.*).

Here, the Court agrees with Nationwide that the facts as alleged preclude a finding that the exception applies. Hampton Court has not set forth sufficient factual matter from which the Court can conclude that the relevance of the exception is more than a mere possibility. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (stating that "mere possibility" is not sufficient to state a claim for relief); *see also id.* at 545 ("[The plausibility standard] simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]."); *Mock v. Cent. Mut. Ins. Co.*, 158 F. Supp. 3d 1332, 1347 (S.D. Ga. 2016) ("[I]t is the majority view that the[ ] burden of proving an exception to an exclusion lies with the insured."). Hampton Court does not point to any factual allegations in the Answer or undisputed Underlying Complain. In fact, it plainly states in its brief that the Underlying Complaint, to which Hampton Court's Answer repeatedly refers, "does not allege facts from which this Court could determine the source of any mold, chemical, allergen, or other toxic substance exposure." (Def.'s Resp. in Opp'n to Pl.'s Renewed Mot. for J. on the Pleadings, at 20). Therefore, the Court holds that the exception

16

does not apply and grants declaratory judgment as to Count II.

### C. Fraud and Misrepresentation Claims (Count III)

An insurer has a duty to defend all claims in a suit only if it has a duty to defend at least one of the claims within that suit. *HDI-Gerling*, 701 F.3d at 666. Hampton Court appears to agree with this basic posture, suggesting that Nationwide does not have a duty to defend Hampton Court on the fraud and misrepresentation claims unless Nationwide has a duty to defend Hampton Court on the bodily injury claim. (*See* Def.'s Resp. in Opp'n to Pl.'s Renewed Mot. for J. on the Pleadings, at 21). Finding no duty to defend Hampton Court regarding the Decedent's personal injuries, this Court additionally finds that Nationwide has no duty to defend Hampton Court on the Decedent's other claims for fraud and misrepresentation.

## IV.   Conclusion

For the foregoing reasons, the Plaintiff Nationwide Property & Casualty Insurance Company's Motion for Judgment on the Pleadings [Doc. 37] is GRANTED. The Clerk is DIRECTED to enter judgment in favor of the Plaintiff on all Counts of the Amended Complaint [Doc. 15] and to close the case.

SO ORDERED, this  17th  day of October, 2024.

THOMAS W. THRASH, JR.
United States District Judge